**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ELBERT KIRBY, JR., and<br>CALEB MEADOWS,<br><br>    Plaintiffs,<br><br>v.<br><br>DAVID M. O'DENS, et al.,<br><br>    Defendants. | Case No. 14-CV-388-GKF-PJC |

## OPINION AND ORDER

Before the Court is Defendants' Motion for Attorney Fees in connection with the unsuccessful attempt to take Plaintiffs' deposition on April 9, 2015. [Dkt. No. 99].

At a hearing on March 23, 2015, the Parties agreed and the Court Ordered that Plaintiffs Elbert Kirby ("Kirby") and Caleb Meadows ("Meadows") would give their depositions on April 9, 2015. Kirby was noticed for deposition to start at 9 a.m. [Dkt. No. 84, Exhibit "1"], while Meadows was noticed for deposition to start at 1 p.m. [*Id.*, Exhibit "2"].

On April 9, David O'Dens, Defendants' counsel, appeared to take Plaintiffs' depositions. Although the depositions never began, the court reporter recorded eight pages of the conversation between the parties. [Dkt. No. 84, Ex. 4]. Kirby denied that he had been noticed for deposition at 9 a.m. and both Plaintiffs then proceeded to obstruct the deposition and make it impossible to proceed. [Dkt. No. 84, Exhibit "4"]. The tone of the confrontation is evident from this comment by Plaintiff Meadows:

> David [O'Dens], you are insisting on that this deposition be run the way you want, but whose deposition is this? This is our deposition. <u>We're going to run it the way we want to run it.</u>

1

[*Id.*, at p. 6, line 23 – p. 7, line 1 (emphasis added)].

Plaintiffs presented O'Dens with an 11-page, single-spaced document entitled "Deposition Requirements and Stipulations" ('the Requirements") which placed wholly inappropriate, unreasonable and frivolous conditions on the agreed depositions. [Dkt. No. 84, Exhibit "3"]. What follows are several examples of the Plaintiffs' preconditions for their depositions:

(1) Depositions would not proceed "unless and until the deposing counsel [s]igns an 'Acknowledgment of Receipt'" of the Requirements and gives it to the Deponent. [*Id.*, Exhibit "3," ¶ 1].

(2) Deponents refused to answer questions orally and insisted on responding to all questions in writing:

"Deponent cannot and will not speak orally at any time during this deposition." [*Id.*, ¶ 2].

"Deposing counsel … is encouraged to limit the number of questions he/she asks in the interest of time, because the production of <u>written answers</u> may take an extended amount of time that may go beyond the entire day and require rescheduling or the mailing of the answers to him/her on some other date following the conclusion of questions." [*Id.*, ¶ 9(b) (emphasis added)].

(3) Deponent refused to give "any oral or written oath of any kind." [*Id.*, ¶ 5]. Deponent would "authenticate and affirm his testimony in writing using the Affirmation contained in section 11" of the Requirements. [*Id.*]. The proposed Affirmation states:

I agree to tell the WHOLE truth, and to interfere and disrupt any efforts by the deposing counsel to censor or restrict what I have to say in response to any particular question, so as to advantage either himself or the parties to this proceeding…. [*Id.*, ¶ 11].

The Plaintiffs then sought to essentially bar any legal proceeding over the truthfulness of their testimony:

The truthfulness or accuracy of any statement made here today may only be litigated under the following circumstances…. [*Id.*, ¶ 11].

These circumstances include restrictions that any such litigation could proceed only in state court, and that the judge in such proceeding could *not* be a "U.S. citizen" or a "taxpayer." [*Id.* ¶ 11(5)(1-2)].

(4) Prior to each question, Defense counsel would have to specify "which item and/or 'Count' within the Complaint that the question is related to by specifying the page number and line number in the Complaint…." [*Id.*, ¶ 9].

(5) Defense counsel would have to agree that when using any of 22 words/phrases, he would "state the legal definition for the record completely and succinctly." These words included the following terms:

- address
- citizen
- executed
- includes
- law
- loan
- obligor
- permanent address
- residence
- resident
- return
- scam
- trade or business
- United States, and
- voluntary.

[*Id.*, at ¶ 10].

(6) The Requirements provided "canned but truthful" responses to Counsel's anticipated preliminary questions. These included the following:

a. Question: Please state your name.

Answer: "My name is 'David M. Dens'.[1] My mother also calls me 'son' (or 'daughter', as the case may be). I am being compelled under illegal duress from you personally, a private individual acting outside your lawful authority, to appear at this deposition…." [*Id.*, ¶ 17-1].

b. Question: Where do you live?

---

[1] Such an answer on behalf of either Kirby or Meadows makes no sense, since "David M. Dens" is not their name. David M. O'Dens is the name of counsel for Defendants.

3

Answer: "I temporarily live in my body. This earth is only a temporal place and I am simply traveling through. I have learned that I came from the stars, that is my home and one day I shall return…. I have taken extraordinary measures to ensure that every government form and application I have ever filled out accurately reflects this lack of legal domicile. If you are going to try to interfere with my choice of legal domicile or compel making it into anything other than what I voluntarily declare and choose it to be, then you are:

1. Kidnapping the legal person that is me in violation of 18 U.S.C. § 1201.
2. Subjecting me to involuntary servitude in violation of the Thirteenth Amendment to the Constitution of the United States of America
3. Violating the First Amendment freedom from compelled association…." [*Id.*, ¶ 17-2].

c. Question: What is your birth date?

Answer: "I have no personal knowledge of when that occurred, and I cannot be required to speculate or "presume" when it occurred. The Federal Rules of Evidence preclude me from trusting anyone else's word on this, because it is Hearsay Evidence excludable under the Hearsay Rule, F.R.Ev. 810." [*Id.*, ¶ 17-3].

(7) Defense counsel would have to agree that the Plaintiffs would be granted immunity from criminal prosecution in connection with the pending lawsuit. [*Id.*, ¶¶ 32-33].

(8) Defense counsel was required to sign the following certification:

I, the deposing counsel, hereby certify that I have lawful delegated authority to grant the Witness Immunity described in this section and authorized by 18 U.S.C. § 6002. In the event that it is later determined that I did not have this authority, I agree as a private individual and not as a public employee or agent, to be held personally responsible for all of the legal consequences of any criminal prosecution of the Deponent in this case. [*Id.*, ¶ 33].

These are merely a few of the conditions that the Plaintiffs invoked in order to prevent the depositions from occurring. Faced with this situation, Defense counsel adjourned the proceedings and sought the Court's intervention. As a result of Plaintiffs' conduct, the Court has had to intervene to re-schedule these depositions after discovery

deadline, at the U.S. Courthouse in order to prevent further obnoxious and juvenile misconduct by Plaintiffs.

Defendants seeks an award of $4,401.00 for fees and costs associated with the frustrated depositions. O'Dens seeks compensation for 16.3 hours at $270 per hour. The time spans a period from April 6 to April 9. It includes compensation for time spent preparing for the depositions on April 6, driving from Dallas, Texas, to Tulsa on April 8, and attempting to take the depositions on April 9. It also includes work on an Emergency Motion filed with the Court on April 9 concerning the Plaintiffs' conduct.

## DISCUSSION

Plaintiffs appear in this case *pro se*, after having been given leave to proceed *in forma pauperis*. However, neither *in forma pauperis* status, nor *pro se* status acts as an "invisibility cloak" hiding Plaintiffs from the consequences of discovery misconduct. Under Rule 37, a court may order a party or deponent, whose conduct necessitated a discovery motion, to pay the reasonable expenses incurred in making the motion – including attorney's fees. In this instance, the Court specifically finds that Plaintiffs' deposition conduct was not substantially justified, nor were there other circumstances that make an award of expenses unjust. Furthermore, Plaintiffs' conduct was in violation of a Court order regarding the scheduling of depositions. *Pro se* litigants proceeding *in forma pauperis* are not immune to monetary sanctions under Rule 37. *Bryant v. J. Knight*, 2011 WL 836658, *1 (E.D.Cal. March 4, 2011).

Courts also have inherent authority to sanction a party for litigation misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *Guarneros v. Deutsche Bank Trust Co. Americas*, 2009 WL 1965491, *6 (D.Colo. July 7, 2009). Additionally, some

courts have held that 28 U.S.C. § 1927 provides a basis for sanctions against *pro se* litigants, not just attorneys. See, *Wallace v. Kelley*, 2007 WL 2248105, *3 (D.Neb. Aug. 1, 2007); *Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990), *cert. denied*, 498 U.S. 1096 (1991); *Brown v. Adidas Int.*, 938 F.Supp. 628 (S.D.Cal. 1996). *Contra*, *Sassower v. Field*, 973 F.2d 75, 80 (2nd Cir. 1992), *cert. denied*, 507 U.S. 1043 (1993).

The amount of a fee award imposed as a discovery sanction is determined by the lodestar approach. *Howard v. Segway, Inc.*, 2013 WL 869955, *7 (N.D.Okla. March 7, 2013). This computation multiplies the reasonable number of hours expended by a reasonable hourly rate. *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1245-46 (10th Cir. 2006). To this end, at a hearing held May 8, 2015, O'Dens testified at length about the time expended as a result of Plaintiffs' conduct and the hourly rate charged. He was cross-examined at length by Plaintiff Meadows.

This Court has examined the hourly rate and number of hours for which compensation is sought and finds the rate to be reasonable in relation to the Tulsa legal market and the hours expended to be reasonable and necessary. Accordingly, Defendants' Motion for Attorney Fees is **GRANTED** in the total amount of $4,401.00 as against Kirby and Meadows jointly and severally. This amount should be paid by July 1, 2015.

**IT IS SO ORDERED** THIS 29TH DAY OF May 2015.

_____
Paul J. Cleary
United States Magistrate Judge