## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ELBERT KIRBY, JR., et al.,        )
                                  )
    Plaintiffs,             )
                                  )
v.                                )        Case No. 14-CV-388-GKF-PJC
                                  )
                                  )
DAVID M. O'DENS, et al.,          )
                                  )
    Defendants.             )

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' Motion for Imposition

of Sanctions (hereafter, "Defendants' motion") asserting Plaintiffs' refusal to

obey certain Orders of this Court or to cooperate in discovery. [Dkt. No. 157].

The specific Orders cited by Defendants are Dkt. Nos. 118, 129 and 130;

however, they also complain of other misconduct related to Plaintiffs'

depositions.   All of these issues were the subject of a hearing on September 9,

2015 ("the September 9 hearing").  Defendants appeared personally through

counsel, David M. O'Dens.  Pro se Plaintiffs appeared by telephone.

Following the hearing, the Court has reviewed the record evidence,

including Exhibits 1-8 to Defendants' motion, the transcripts of and exhibits

from Plaintiffs' depositions on June 8, 2015, and other relevant pleadings, and

has considered the arguments propounded at the September 9 hearing.  After

weighing all of this material, the Court finds that for the past 10 months,

Plaintiffs have willfully obstructed and refused to cooperate in discovery, all in

violation of this Court's discovery orders and the Federal Rules of Civil Procedure. Plaintiffs have refused to properly answer discovery after having been ordered to do so. They have refused to properly verify interrogatory responses "under penalty of perjury", after having been ordered to do so. They have deliberately engaged in a pattern of abusive and childish conduct that has needlessly increased the expense of this litigation and frustrated the truth-seeking mission of discovery. Therefore, after careful consideration of the record evidence and the factors set forth in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992), and for the reasons detailed below, I **RECOMMEND THAT PLAINTIFFS' LAWSUIT BE DISMISSED WITH PREJUDICE**.

# I
## INTRODUCTION

*Pro se* Plaintiffs Elbert Kirby, Jr. ("Kirby") and Caleb Meadows ("Meadows") filed this action on July 11, 2014, alleging misconduct by three Defendants in connection with collection of a debt. The Defendants are David O'Dens ("O'Dens"), his law firm SettlePou ("SettlePou"), and their client, Ocwen Loan Servicing LLC ("Ocwen"). The underlying debt relates to a 2005 mortgage loan made by ResMae Mortgage Corporation to Kirby in connection with property at 1125 East Eighth St., Tulsa Oklahoma ("the 1125 property"). It appears that in 2011, Kirby transferred title to the 1125 property to the "1125 East 8th Street Trust" ("the 1125 Trust").

To appreciate the discovery problems in this case, it is critical to understand the different positions occupied by the two Plaintiffs and the three Defendants relative to the dispute. Kirby executed the Note and Mortgage that

gives rise to the debt that is at the heart of this case. Meadows' role is unclear. While his name does not appear on documents associated with the mortgage loan to Kirby, he testified at his deposition that he is a Trustee of the 1125 Trust.[1] The differences in the Plaintiffs' roles has necessitated targeted discovery concerning the basis of each Plaintiff's individual claims. Likewise, it is critical to understand the different positions of the Defendants and their roles in this dispute. Ocwen first became involved with the Plaintiffs in April 2010 when it took over the servicing of Kirby's mortgage loan. O'Dens and SettlePou first became involved with the Plaintiffs in March 2014 when they entered their appearances in a foreclosure action against Kirby in Tulsa Country District Court. *US Bank National Ass'n v. Elbert Kirby, Jr., et al.*, No. CJ-2012-5031 (Tulsa County Dist. Court); *See* Dkt. No. 130, p. 3. Defendants' discovery had to be tailored to the different roles and time periods associated with each Plaintiff and each individual Defendant.[2] A significant problem, therefore, has been Plaintiffs' unwillingness to answer discovery individually and to provide separate responses to each Defendant's discovery.

---

[1]     Meadows testified that he does not know whether Kirby is also a Trustee of the Trust. [Meadows 6/8/2015 dep., pp. 75-78]. Kirby refused to answer whether he was a Trustee. [Kirby 6/8/2015 dep., pp. 150-52].

[2]     This issue was discussed in the Court's May 29 Opinion and Order [Dkt. No. 130, pp. 3-4].

## II
## PROCEDURAL HISTORY OF THE MOTION

There is a long and painful background to Defendants' motion.  The story begins with discovery requests – Interrogatories, Requests for Production and Requests for Admission – that were served on the Plaintiffs in November 2014. From that date to the present, Plaintiffs' responses have been the subject of numerous Motions to Compel, Court hearings, conferences and sanctions motions.  *See*, Dkt. Nos. 25, 29, 56, 67, 76, 84, 86, 93, 99, 118, 119, 124, 129, 130, 162.  After all of this, the Defendants still have not received basic discovery to which they are entitled, and which the Plaintiffs were ordered to properly provide.

The instant motion was filed on July 6, 2015, with supporting documentation.  Plaintiffs did not respond to the motion.   On July 29, 2015, Defendants filed a Reply, noting Plaintiffs' failure to respond and ongoing failure to comply with the Court's orders.  [Dkt. No. 164].  Thus, Plaintiffs twice received notice of Defendants' motion, but ignored it.

On August 21, 2015, the Court directed the Defendants to submit the full transcripts of Plaintiffs' depositions for review.  [Dkt. No. 183].  On August 26, the Court set the Defendants' motion for hearing and emphasized in that Order that Defendants had specifically requested that Plaintiffs' lawsuit be dismissed.  [Dkt. No. 193].

Finally, on August 28, 2015, Plaintiffs acknowledged Defendants' motion by filing a Motion for Leave to File Response to Defednants' (sic) Motion for Sanctions.  [Dkt. No. 195].  Although their response was already a month

overdue, Plaintiffs asked for an additional three weeks to respond. Defendants objected to the Plaintiffs' motion [Dkt. No. 198]. The Motion was denied on September 4, 2015. [Dkt. No. 199].

On September 8, 2015, Plaintiffs filed a "Motion to Strike Hearing by Cleary on Defendnats (sic) Motion for Sanctions." [Dkt. No. 200]. This motion was largely an *ad hominem* attack on the undersigned, but they stated that their schedules would not allow them to attend the September 9 hearing in person. [*Id.*, p. 2]. The Court granted this motion in part and denied it in part: The hearing would go forward as scheduled, but Plaintiffs would be permitted to appear by phone. [Dkt. No. 202]. O'Dens appeared in person on behalf of all three Defendants; Kirby and Meadows both were given a full opportunity to respond to the motion. At the hearing, Defense counsel spent much of his time addressing the *Ehrenhaus* factors and how they were satisfied in this case. Plaintiffs never addressed *Ehrenhaus*.

### III
### THE SPECIFIC ORDERS AT ISSUE

The instant motion specifically concerns three separate Orders of this Court issued in May 2015.[3] [Dkt. Nos. 118, 129 & 130]. These Orders concerned, among other things, proper verification of interrogatory responses "under penalty of perjury", production of separate discovery responses from each Plaintiff to each Defendant, and payment of a sanction award by July 1,

---

[3] Plaintiffs were also ordered at the March 23, 2015, and the May 8, 2015, hearings to provide or amend certain discovery responses.

2015.[4]  Defendants assert Plaintiffs have not complied with any of these Orders; furthermore, because the circumstances giving rise to these Orders relate directly to issues concerning Plaintiffs' depositions, their deposition conduct is also a matter for the Court's consideration.  For example, much of the deposition questioning Defendants pursued was designed to elicit basic information that the Plaintiffs had refused to provide in written discovery.

## IV
## APPLICABLE LEGAL PRINCIPLES

Pursuant to Fed. R. Civ. P. 37, a party who fails to obey an order to provide or permit discovery may be subject to sanctions.  These sanctions include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

---

[4]    The District Court allowed Plaintiffs to file this action *in forma pauperis* [Dkt. No. 7].  However, IFP status does not shield the Plaintiffs from the consequences of litigation misconduct.  *See*, *Opinion and Order*, Dkt. No. 129, at 5-6, and cases cited therein.  Furthermore, Plaintiffs have never indicated that they would be unable to pay the award of attorney fees and costs imposed by the Court for their frivolous deposition misconduct, and have never requested an extension of time within which to make payment.

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 37(b)(2)(A)(i)-(vii).

Rule 37(b) concerns the most serious sanctions a court may impose for discovery violations. First, there must be a specific Court Order that has been violated. Here, the Court has entered at least three specific Orders directing Plaintiffs to amend their discovery responses to omit certain objections, properly verify their interrogatory answers, serve discovery responses by each Plaintiff individually and serve discovery responses to each Defendant separately. Finally, the Court has ordered Plaintiffs to pay a sanction award of $4,401 by July 1, 2015. Second, the Court must find that the order(s) have been disobeyed. Plaintiffs have failed to comply with the Court's orders, despite numerous opportunities to do so.

Under these circumstances, the Court may impose a "merits sanction"; that is, sanctions that "directly impact or resolve the merits of the case." Steven S. Gensler, *Federal Rules of Civil Procedure: Rules and Commentary*, p. 789 [2013]. For example, a court may impose a proof-based sanction, deeming certain facts to be established, or precluding a party from offering evidence on certain issues. Rule 37(b)(2)(A)(i) & (ii). A court may also strike parts of pleadings, dismiss the case in full or part, or enter a default judgment. Rule 37(b)(2)(A)(iii), (v) & (vi). *See also, O'Neil v. Burton Group*, 559 Fed. Appx. 719, 720 n.4 (10th Cir. 2014); *Porter Bridge Loan Co., Inc. v. Northrop*, 566 Fed.Appx. 753, 756 (10th Cir. 2014); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153,

1159-60 (10th Cir. 2013); *Gross v. Gen. Motors LLC*, 441 Fed. Appx. 562, 564-66 (10th Cir. 2011).

In *Ehrenhaus*, 965 F.2d 916, the Tenth Circuit Court of Appeals discussed a court's authority to dismiss a case for failure to obey discovery orders.  The Tenth Circuit noted that a district court's authority is rooted in Rule 37(b), but recognized that "dismissal represents an extreme sanction appropriate only in cases of willful misconduct."  *Id.* at 920.  The court observed that in many cases a lesser sanction would "deter the errant party from further misconduct."  *Id.*  The court also observed:

> Particularly in cases in which a party appears pro se, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the courts because of a technical violation.

*Id.*, n.3.[5]

The Tenth Circuit outlined five factors a court should consider before determining the appropriate sanction to be imposed.  The five factors are:

- The degree of actual prejudice to the defendant;
- The amount of interference with the judicial process;
- The culpability of the litigants;
- Whether the court warned the parties in advance that dismissal of the action would be a likely sanction for noncompliance; and,
- The efficacy of lesser sanctions.

*Id.* at 921 (citations omitted).

---

[5]     For the reasons set out herein, the Court finds that Plaintiffs' misconduct reflects full knowledge of their disobedience.  Furthermore, the misconduct can hardly be described as a "technical violation."

These factors do not constitute a rigid test; but are matters for a court's consideration before imposing dismissal as a sanction. "The court should ordinarily evaluate these factors on the record." *See*, *Bud Brooks Trucking v. Bill Hodges Trucking*, 909 F.2d 1437, 1439 (10th Cir.1990).

## V
## FINDINGS OF FACT

1.      Plaintiffs brought this lawsuit alleging violation of the Fair Debt Collections Practices Act and the Telephone Consumer Protection Act. [Dkt. No. 23].

2.       In November 2014, Defendants served Plaintiffs with eight (8) sets of discovery requests. Each of the three Defendants served each of the Plaintiffs with a First Set of Interrogatories, while the Defendants jointly served each Plaintiff with a First Set of Requests for Production. [Dkt. No. 25, at 2-3].

3.      Plaintiffs did not respond individually to the discovery requests; nor did the Plaintiffs respond to each Defendant separately. Furthermore, the Plaintiffs did not properly verify the interrogatory responses as required by Fed. R. Civ. P. 33(b)(3).

### A. Plaintiffs' Disobedience of the Court's
### May 29, 2015 Order [Dkt. No. 130]

4.      At a hearing on March 23, 2015, the relevance of certain discovery was discussed with the Parties. Plaintiffs were directed to (A) amend and serve separate verified answers to interrogatories propounded by O'Dens; (B) serve separate verified answers to interrogatories propounded by

SettlePou; (C) serve separate verified answers to interrogatories propounded by Ocwen; and (D) serve separate responses to the individual requests for production of documents propounded by the three Defendants. In addition, a schedule was ordered for the depositions of the Plaintiffs and the Defendants.

5. Plaintiffs provided amended discovery responses on April 2, 2015. These responses did not comply with the Court's directives. Among other things, Plaintiffs failed to property verify their interrogatory responses, answered only interrogatories served by O'Dens while ignoring those served by Ocwen and SettlePou, and failed to provide separate answers to Requests for Production. Further, after the Court overruled Plaintiffs' relevancy objection to certain Requests for Admission, the Plaintiffs "amended" the responses, striking the word "relevancy" and inserting a new objection, "scope."[6]

6. On April 26, 2015, Defendants filed their Fourth Motion to Compel, [Dkt. No. 76], asking that the Court order the Plaintiffs to respond to discovery as directed at the March 23, 2015, hearing. On May 29, 2015, Defendants' Fourth Motion to Compel was granted, and Plaintiffs were ordered by June 7, 2015, to "fully comply with the Court's order and the Rules of Civil Procedure by providing proper, verified answers to interrogatories and full responses to the Requests for Production." [Dkt.

---

[6] After Kirby ignored multiple opportunities to correct the problems with his responses to the Requests for Admission, the Court held that the RFAs – with the exception of RFA No. 23 – were deemed admitted. [Dkt. No. 130, pp. 5-10].

No. 130, at 9-10];  *Kirby v. O'Dens*, 2015 WL 3455412, *5 (N.D.Okla. May 29, 2015).   Furthermore, the Court expressly informed Plaintiffs of the possible consequences of not non-compliance:

> **Failure to comply with this Order will subject the Plaintiffs to possible sanctions, up to and including a recommendation that this case be dismissed for failure to cooperate in discovery and failure to obey Court orders.**
> (emphasis in original).

7.     Plaintiffs appealed the Magistrate Judge's discovery order.  [Dkt. No. 149].  On June 29, 2015, the District Court overruled Plaintiffs' appeal [Dkt. No. 155]; however, Plaintiffs have never complied with the underlying discovery order.

8.     Plaintiffs have disobeyed the Court's discovery rulings that were issued at the March 23, 2015, hearing and reiterated in the Court's discovery Order [Dkt. No. 130].  Plaintiffs have not filed any response to Defendants' motion that disputes this.

9.     The Court finds that Plaintiffs have failed to comply with the Court's Order of May 29, 2015 [Dkt. No. 130], and have offered no valid excuse for their misconduct.

## B. Plaintiffs' Disobedience of the Court's May 14, 2015 Order [Dkt. No. 118]

10.     In March 2015, each Defendant served a Second Set of Interrogatories on each of the Plaintiffs.  Plaintiffs did not answer these interrogatories.  Therefore, on April 20, 2015, Defendants filed their Fifth Motion to Compel [Dkt. No. 93].

11.     A lengthy hearing was held on May 8, 2015.  Although Plaintiffs claimed they never received the interrogatories, Defendants established that the interrogatories had been mailed to Plaintiffs and that the Postal Service attempted delivery at Plaintiffs' residence.  When delivery was not completed, the Postal Service left a "green card" for Plaintiffs notify them to pick up the letters at the Post Office.  Plaintiffs failed to do so, and the Postal Service returned the letters to Defendants' counsel.

12.     On May 14, 2015, the Court granted Defendants' Fifth Motion to Compel and ordered Plaintiffs to "fully answer the interrogatories and verify them as required by Rule 33(b)(3) under oath and return their answers to Defendants by **May 22, 2015**."  [Dkt. No. 118, at 7-8 (emphasis in original)]; *Kirby v. O'Dens*, 2015 WL 2341535, *5 (N.D.Okla. May 14, 2015).

13.     On May 23, 2015, Plaintiffs served interrogatory answers on the Defendants; however, the answers did not comply with the Court's Order.  Plaintiffs again jointly responded to the interrogatories and provided a "global answer" that did not provide the requested specific information as to each Defendant.  Again, the interrogatory answers were not properly verified "under penalty of perjury."

14.     The Court finds that Plaintiffs have not complied with the Court's *Opinion and Order* of May 14, 2015 [Dkt. No. 118], and have offered no valid excuse for their misconduct.  Discovery has not been answered separately; thus, it is impossible to tell how Plaintiff Kirby's discovery

answers differ from Plaintiff Meadows'.  Nor do Plaintiffs' discovery responses differentiate among the three Defendants.  Plaintiffs have not fully answered the discovery and have not properly verified their interrogatory answers.  Nor did Plaintiffs serve their responses timely.

### C. Plaintiffs' Disobedience of the Court's Order Regarding Attorney Fees [Dkt. No. 129]

15.     On April 22, 2014, Defendants filed their Motion for Attorney Fees incurred in connection with Defendants' attempt to take Plaintiffs' depositions as ordered by the Court.  [Dkt. No. 99].  The circumstances of that motion and the outrageous conduct perpetrated by the Plaintiffs on April 9, 2015, are discussed in detail in the Court's *Opinion and Order* of May 29, 2015 [Dkt. No. 129], and are also described below.  The Court granted an award of fees and expenses in the total sum of $4,401 against Kirby and Meadows jointly and severally, and directed that this payment was to be made by July 1, 2015.  [*Id.*, at 6]; *Kirby v. O'Dens*, 2015 WL 3455409, *4 (N.D.Okla. May 29, 2015).

16.     Plaintiffs objected to the undersigned's May 29, 2015, *Opinion and Order* [Dkt. No. 148], but the Objection was rejected by the District Court on June 29, 2015 [Dkt. No. 155].  Defendants assert that Plaintiffs have failed to pay the award of fees and expenses by the date ordered.  [Dkt. No. 157].  Plaintiffs do not dispute this.  Plaintiffs never sought an extension of time to comply with this order; nor did they offer any explanation for their non-compliance.  The Court finds that Plaintiffs

have not complied with the Court's May 29, 2015, *Opinion and Order* [Dkt. No. 129]; and have not offered any valid excuse. Nevertheless, the Court is *not* recommending dismissal based on Plaintiffs' failure to obey this sanction Order. Plaintiffs have been granted *in forma pauperis* status and <u>may</u> have a valid excuse for not paying the $4,401 sanction. Therefore, the Court **RECOMMENDS** that a Judgment be entered against the Plaintiffs for this amount and that the question of ability to pay be resolved through a Hearing on Assets at the appropriate time.

## VI
## FINDINGS REGARDING OTHER RELEVANT CONDUCT

Plaintiffs' misconduct in the discovery process has not taken place in a vacuum. To fully understand the Plaintiffs' willful obstruction of discovery, it is necessary to recount related deposition conduct. Defendants first noticed Plaintiffs for depositions in February 2015, but Plaintiffs failed to appear, claiming they never received the deposition notice. In March 2015, Defendants filed a Motion to Compel Depositions. [Dkt. No. 56]. The Court addressed the issue during a discovery hearing on March 23, 2015. [Transcript of 3/23/2015 hearing, pp. 52-61]. By agreement *and* by Court order, a deposition schedule was established. Plaintiffs would give their depositions on April 9, 2015.

On the appointed day, it became clear that Plaintiffs had no intention of honoring their promise to cooperate in deposition discovery, or following the Court's Order in this regard. When Attorney O'Dens arrived at the agreed-upon location to begin the depositions, Plaintiffs presented him with an 11-page, single-spaced document entitled "Deposition Requirements and

Stipulations" ('the Requirements").  *See*, Dkt.No. 84, Exhibit "3."  Plaintiffs

unilaterally imposed a myriad of wholly inappropriate, unreasonable and

frivolous conditions on the Court-ordered depositions.  These were clearly

designed to derail the depositions and stop them from occurring.  These are

but a few examples of Plaintiffs' preconditions[7]:

(1) Depositions would not proceed "unless and until the deposing counsel
[s]igns an 'Acknowledgment of Receipt'" of the Requirements and gives it to the
Deponent. [*Id.*, Exhibit "3," ¶ 1].

(2) Deponents would not answer orally, insisting that they would respond to
questions only in writing:

> "Deponent cannot and will not speak orally at any time during this
> deposition." [*Id.*, ¶ 2].

> "Deposing counsel … is encouraged to limit the number of questions he/she
> asks in the interest of time, because the production of **written answers** may
> take an extended amount of time that may go beyond the entire day and
> require rescheduling or the mailing of the answers to him/her on some
> other date following the conclusion of questions." [*Id.*, ¶ 9(b) (emphasis
> added)].

(3) Deponent would not take "any oral or written oath of any kind." [*Id.*, ¶ 5].
Deponent would "authenticate and affirm his testimony in writing using the
Affirmation contained in section 11" of the Requirements. [*Id.*]. The proposed
Affirmation states:

> I agree to tell the WHOLE truth, and to interfere and disrupt any efforts
> by the deposing counsel to censor or restrict what I have to say in
> response to any particular question, so as to advantage either himself
> or the parties to this proceeding…. [*Id.*, ¶ 11].

The Plaintiffs then sought essentially to bar any legal proceeding over the

truthfulness of their testimony:

> The truthfulness or accuracy of any statement made here today may
> only be litigated under the following circumstances…. [*Id.*, ¶ 11].

---

[7]      Many of these examples were contained in the Court's prior *Opinion and
Order*.  *See*, 2015 WL 3455409, *supra*, *1-*3.

These circumstances include restrictions that any such litigation could proceed only in state court, and that further, "No jurist or judge may be a 'U.S. citizen' under 8 U.S.C. §1401, or a 'taxpayer' under 26 U.S.C. §7701(a)(14)." [*Id.* ¶ 11(5)(1-2)].[8]

(4) Prior to each question, Defense counsel would have to specify "which item and/or 'Count' within the Complaint that the question is related to by specifying the page number and line number in the Complaint...." [*Id.*, ¶ 9].

(5) Defense counsel would have to agree that when using any of 22 words/phrases, he would "state the legal definition for the record completely and succinctly." These words included the following terms:

> - address
> - citizen
> - executed
> - includes
> - law
> - loan
> - obligor
> - permanent address
> - residence
> - resident
> - return
> - scam
> - trade or business
> - United States, and
> - voluntary.

[*Id.*, at ¶ 10].

(6) The Requirements provided "canned but truthful" responses to Counsel's anticipated preliminary questions. These included the following:

a. Question: Where do you live?

Answer: "I temporarily live in my body. This earth is only a temporal place and I am simply traveling through. I have learned that I came from the stars, that is my home and one day I shall return.... I have taken extraordinary measures to ensure that every government form and application I have ever filled out accurately reflects this lack of legal

---

[8] 8 U.S.C. § 1401 defines who are nationals and citizens of the United States at birth. 26 U.S.C. § 7701(a)(14) defines the term "taxpayer" for purposes of the Internal Revenue Code.

domicile. If you are going to try to interfere with my choice of legal domicile or compel making it into anything other than what I voluntarily declare and choose it to be, then you are:

> 1. Kidnapping the legal person that is me in violation of 18 U.S.C. § 1201.
> 2. Subjecting me to involuntary servitude in violation of the Thirteenth Amendment to the Constitution of the United States of America
> 3. Violating the First Amendment freedom from compelled association...."

[*Id.*, ¶ 17-2].

> b. Question: What is your birth date?
>
> Answer: "I have no personal knowledge of when that occurred, and I cannot be required to speculate or "presume" when it occurred. The Federal Rules of Evidence preclude me from trusting anyone else's word on this, because it is Hearsay Evidence excludable under the Hearsay Rule, F.R.Ev. 810." [*Id.*, ¶ 17-3].

(7) Defense counsel would have to agree that the Plaintiffs would be granted immunity from criminal prosecution in connection with the pending lawsuit. [*Id.*, ¶¶ 32-33].

(8) Finally, Plaintiffs required Defense counsel to sign the following certification:

> I, the deposing counsel, hereby certify that I have lawful delegated authority to grant the Witness Immunity described in this section and authorized by 18 U.S.C. § 6002. In the event that it is later determined that I did not have this authority, I agree as a private individual and not as a public employee or agent, to be held personally responsible for all of the legal consequences of any criminal prosecution of the Deponent in this case. [*Id.*, ¶ 33].

The undersigned has never before been confronted with such inane, disruptive, and sophomoric behavior. The Plaintiffs' objective clearly was to frustrate and obstruct the scheduled depositions, and that is exactly what occurred. Defense counsel could not go forward with the depositions if it required acceding to Plaintiffs' demands. It was this conduct that caused the

Court to assess fees and costs of $4,401 against the Plaintiffs jointly and severally. [Dkt. No. 129, at 6].

At a hearing on May 8, 2015, the Court addressed the Plaintiffs' depositions and expressly warned them that any such behavior in the future could result in their case being dismissed:

> Well, gentlemen, Mr. Meadows, I think one of the issues, big issues, is going to be **if you folks are going to insist on behavior like this, conduct like this, you're going to leave us very little – me very little room other than to dismiss this case or recommend that it be dismissed for, you know, your conduct and your unwillingness to participate in discovery** after we had agreed. You know, when we were here in March, we worked out an agreement. I took you folks at your word.... I trusted you folks that you were going to cooperate and we were going to get this moved ahead. I ordered the depositions after we worked out the details. There's no basis in law for this, for this kind of stuff, just is no basis in law for it.

[Transcript of 5/8/2015 hearing, p. 47, lines 7-19 (emphasis added)].

The depositions were then re-scheduled for the Federal courthouse, so that the undersigned could supervise Plaintiffs' behavior. At the hearing on the instant motion, Meadows told the Court that Plaintiffs had fully answered all questions at their depositions, but that O'Dens insisted on asking the same questions over and over. The Court has reviewed the full transcripts of those depositions and they clearly reveal that Meadows' representation to the Court is both foolish and false. Plaintiffs' continued to obstruct deposition discovery, by pretending not to understand even basic questions and terms. For example, Meadows refused to state where he lives and testified that he could not understand the term "Tulsa, Oklahoma":

Q:    Mr. Meadows, where do you live?

A:      I think that's already been answered, but my answer will stay the same. I live in my body.

Q:      Okay.  Do you have a physical address where you live?

A:      There's a mailing address, if that's what you're asking.

Q:      What is your mailing address?

A:      Well, it would be the 1125 East 8th Street.

Q:      Okay.  In Tulsa, Oklahoma?

A:      Are you talking about the – clarify "Tulsa, Oklahoma."

Q:      You really don't know what "Tulsa, Oklahoma" means? …. Where are you right now?  Do you know?

A:      I'm in my body.  I know that.  I'm looking at you.

Q:      Are you sitting in the United States courthouse in Tulsa, Oklahoma?

A:      What do you mean by "Tulsa, Oklahoma"?  That's where we're asking. That's where we're at again.

Q:      You don't understand that it means to be in the city of Tulsa in the state of Oklahoma?

A:      Those are legal fictions that I do not understand.[9]

[6/8/2015 dep. of Caleb Meadows, pp. 4-5].

Meadows frequently refused to answer basic questions about his claims.

For example, he was asked what property he alleged was being taken from him

by the Defendants – a fundamental element of his claim for damages:[10]

Q:      Can you tell me what property is being taken via a sham foreclosure?

A:      David, at this point, I don't feel comfortable with asking that question because you directed me to answer it, but you didn't give me a way not to answer it, so why would you do something like that?

[Meadow dep., pp. 16-17].

Q:      You've made a verified allegation in this lawsuit that you, along with Mr. Kirby, are having property taken away from you via a sham foreclosure

---

[9]      Apparently Meadows had a better understanding of this "legal fiction" when he filed this lawsuit and listed his address as "Tulsa, Oklahoma."  Dkt. No. 1.  He was not confused by the term when he placed it on every pleading and discovery response he has made in this lawsuit.  *E.g.*, Dkt. Nos. 2, 3, 6, 26, 69, 94, 135,176, 201].

[10]     Paragraphs 2-4 of the Plaintiffs' Amended Complaint alleges that the Defendants had engaged in collection activity "to the end result of taking away real estate" from the Plaintiffs.  [Dkt. No. 23].

that exceeds $500,000, and I'm asking a very simple question.  What property do you fear you're going to lose via a sham foreclosure?

A:    That's already been answered.

Mr. Kirby:   Objection.  There's a fear in how you're conducting this.  That has not been resolved.[11]

Q:    Do you have legal title to 1125 East 8th Street in Tulsa, Oklahoma?

A:    I'm going to ask for a break.

Q:    You can take a break as soon as you answer my question.

A:    I can take a break whenever I want.

Q:    Actually, you can't, Mr. Meadows, but I really don't want to get into that with you.  Just answer the question and we'll take a break.

A:    I'm not prepared to answer it.  I do not feel comfortable with answering it, especially after you've threatened me.

[*Id.*, pp. 17-18].

Meadows refused to answer whether he had ever purchased the real property at 1125 East 8th Street.  [*Id.*, p. 19].  He refused to answer whether he had borrowed money to purchase the real property because he did not know the meaning of "borrow":

Q:    Have you ever borrowed any money from Resmae Corporation in connection with the purchase of a piece of property in Tulsa, Oklahoma?

Mr. Kirby:   Objection.  I think you need to define what you're talking about.  We don't know what that means.

A:    Yeah.  I don't know what borrower – borrowed means.

Q:    You don't know what "borrow" means?

A:    No.

---

[11]    Throughout the Plaintiffs' depositions, the *pro se* Plaintiffs would act as counsel for each other, registering objections and occasionally instructing the witness not to answer.  *See*, 6/8/2015 dep. of Elbert Kirby, Jr., at 11-12.  This was improper because a *pro se* litigant may not represent another person in federal court.  *Yarbary v. Martin, Pringle, Oliver, Wallace & Bauer*, 2014 WL 1655542, *4 (D.Kan. April 25, 2014) (*citing Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1299 (10th Cir. 2011) and *Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011)).  While a *pro se* plaintiff "has the right to appear on his own behalf, he may not represent another *pro se* plaintiff in federal court."  *Whitmore v. Harris*, 2014 WL 906563, *3 (W.D.Okla. March 7, 2014) (*quoting Sule v. Story, No. 95-1422*, 1996 WL 170156, *1 (10th Cir. April 11, 1996)) (unpublished decision).

[*Id.*, p.20].

He refused to answer whether he had ever borrowed money from anyone, because he did not know the meaning of the word "money."[12]  He said he did not know if he had ever seen United States currency.

Q:     You've never borrowed any money from anybody?
        Mr. Kirby:  Objection.  What do you mean by "money."
A:     What do you mean by "money."
Q:     You don't know what "money" means?
        Mr. Kirby: Would you clarify please?
A:     Please give me your clarification and define it so that I may answer
        you – fully answer and give a truthful response to your question.
Q:     You don't understand what "money" means?  Have you ever seen
        United States currency?
Mr. Kirby:  Objection.  Speculation.
A:     I'm not certain.

[*Id.*, pp. 21-22].

Elsewhere, Meadows testified that he did not understand the word "prepare" [*id.* at 24], "married" [*id.* at 32], or the phrase "Social Security number" [*id.*, at 41].

Kirby's deposition proceeded in the same vein.  Just as Meadows had done, Kirby testified he did not know the meaning of "Tulsa County, Oklahoma."

Q:     When you signed the answers, Plaintiff's Response to Defendant's
        Second Set of Interrogatories Propounded to Elbert Kirby, Jr., were
        you in Tulsa County when you signed them?
A:     What is your definition of Tulsa County?
Q:     Tulsa County, Oklahoma.
A:     What is that?
Q:     You don't know what Tulsa County, Oklahoma, is?

---

[12]    While Meadows has testified under oath that he does not know what the word "owe" means or what "money" is, he has had no problem claiming that Defendants owe him more than $1 million in damages. [Dkt. No. 157, Ex.4 at p.4].

A:     I'm asking you to help me understand what you're asking.

Q:     I'm asking you:  You don't understand what Tulsa County, Oklahoma, is?

A:     Well, it would depend on how you spell it and what you're making reference to.

Q:     Where do you live?

A:     In my body.

Q:     Okay.  Where do you physically reside?

A:     Reside?  What do you mean by that?

[*Id.*, p. 82].

The witness would not even provide a clear answer as to his name:

Q:     Is Elbert Kirby Jr. your full legal name?

A:     I'm not certain what you're asking.

Q:     Do you go by any other name?

A:     Are you asking me if I have other legal aliases?

Q:     Yes.

A:     I don't have that one.  I don't possess a legal alias.

Q:     Do you possess any other alias?

A:     Would you rephrase that?  I'm not certain what you're asking.

Q:     Okay.  Are you known by any other name other than Elbert Kirby, Jr.?

A:     I would be uncertain as to how to answer what others would know.

Q:     Have you ever told anybody that your name is anything other than Elbert Kirby, Jr.?

A:     I've been told many things.  I've been told son, friend, comrade, adversary.  There's many names that have been used.  It's a label.

Q;     My question, sir, have you ever been –
        Mr. Meadows:  Objection.  You're badgering the witness.

Q:     Have you ever referred to yourself as anything other than Elbert Kirby, Jr., as your legal name?

A:     I do not refer to myself.

[6/8/2015 dep. of Elbert Kirby, Jr., pp. 5-6].

Much time was spent trying to get the witnesses to explain what

they meant by simple, common words.

Q:     Are you willing to swear or affirm under penalty of perjury that the allegations [in the Second Verified Petition] are correct?

A:     Affirm.

Q:     And by "affirm," you mean "yes"?

A:     By "affirm," I mean what affirm means.

Q:     What does affirm mean to you?

A: What would it mean in the legality term?
Q; Does it mean "yes" or "no" to you?
A; It doesn't just mean "yes" or "no." It means affirm.
Q: You don't have any problem understanding the term "affirm"?
A; Who stated that there was a problem? Why are you asking me a question from that deny? Why would you state that?

[*Id.*, pp. 13-14].

Kirby professed ignorance of the meaning words such as "residence [*id.*, p. 146], "United States" [*id.*, p. 83], "reside" [*id.*, p. 82], "Tulsa County, Oklahoma" [*id.*, p. 82].

In response to the question whether he transferred title to the 1125 East 8th Street property to 1125 East 8th Street Trust, Kirby offered a particularly – and intentionally – incoherent answer:

A: Based upon the information that you have presented and the affidavit of prejudice and bias that I put in and the threat that you brought by bringing [Magistrate Judge] Cleary's name into this deposition has caused me a tremendous amount of duress. I'm not certain what you're trying to compel from me. I'm offering you the answers the best way I know how.

I am needing a break and it has been a while. David [O'Dens], I don't do this as a profession.

Now the question you're asking seem, in most regard, valid, but the information as you have presented thus far, and I've told you, in its redacted form in all of the paperwork, I've tried to, for argument's sake, be with it, but it seems as though it is nothing but a compile of falsities.

Now you're stipulating question to try to then duress me by saying that I can press a button and go to a space which would only cause further duress, as you know, that that's not a space that just go and knock on the door of.

So I take offense to the way that you're making mockery of this. This is a serious occasion, and I'm having a great amount of stress handling this abuse that you are putting me under.

[*Id.* at pp. 150-51].

Kirby refused to state that interrogatory answers he provided were answered "under penalty of perjury":

Q:     When you answered the Interrogatories, did you intend to swear or affirm that the answers were true under penalty of perjury?
A:     So I said earlier; I don't swear, so I would be unable to do that.
Q:     Did you affirm that the answers were true under penalty of perjury?
A:     There is an affirm in every statement that's spoken in truth, indeed.

[*Id.*, p. 72].

This behavior continued until O'Dens finally gave up:

MR. O'DENS:        Let the record reflect that Mr. Kirby is not responsive at this point.

THE WITNESS:      And you are, as the witness now, giving your hearsay of what you would attest as to what nonresponsive is, but you continue to ask the same questions.  I object, and let the record reflect that you are badgering the witness.

[*Id.*, p. 81].

At times, the witness's testimony amounted to mere gibberish:

Q:     Do you recall speaking to a representative of Ocwen Loan Servicing on April the 30th, 2010?  [after discussion as to whether the question had been answered] .... Well, this is my opportunity to ask questions, not yours.  You can either answer my question or not.  It's up to you.
A:     I answered it the first time happily.
Q:     But you're unhappy to answer it a second time?
A:     <u>The antithesis, it shows me only your dichotomy, but there's a middle that doesn't speak as well.  That makes polarity make sense.</u>

[*Id.*, pp. 42-43 (emphasis added)].

The Plaintiffs' behavior in scuttling the depositions scheduled for April 9, 2015, and their misconduct in refusing to answer even simple questions at the

June 8, 2015, depositions make it clear that Plaintiffs' goal was to undermine and frustrate the discovery process. Deposition questions were designed to elicit the basic information that Plaintiffs should have provided in written discovery. Plaintiffs' refusal to obey the Court's specific discovery orders [Dkt. Nos. 118 & 130] was only part of their overall plan to prevent any meaningful discovery from occurring.

This small view of Plaintiffs' deposition conduct clearly establishes that their representations to the Court on September 9, 2015, were untrue. Plaintiffs did not answer questions at their depositions. Instead, they continued the same juvenile nonsense they have displayed throughout discovery.

## VII
## CONCLUSIONS OF LAW

Plaintiffs have willfully disobeyed this Court's orders regarding discovery and failed to comply with the Rules of Civil Procedure. They have failed to verify their interrogatory answers, failed to answer discovery individually, failed to serve separate discovery responses to each Defendant, and failed to pay a discovery sanction – all as ordered by this Court. This misconduct is in violation of the Federal Rules, including Rules 30(c)(2) (improper objections), 30(d)(2) (impeding, delaying or frustrating the fair examination of deponent) , 33(b)(3) (verification of interrogatories), 34(b)(2)(B) & (C) (responses and objections to production requests), 37(a)(5) (sanctions for failure to cooperate in discovery). Plaintiffs do not dispute their failures and have offered no evidence to refute the Defendants' evidence. The Court must now consider whether the sanction requested by Defendants – dismissal of Plaintiffs' lawsuit – is an

appropriate sanction in these circumstances. The Court will now consider the factors identified in *Ehrenhaus* in deciding the question.

**A. Prejudice to the Defendants**

Plaintiffs' discovery misconduct has significantly prejudiced Defendants. As this Court noted in a previous Order, *see* Dkt. No. 130, at ¶I(B)-(C), it is critical to understand that the two Plaintiffs and three Defendants are not identically situated with respect to the claims herein. In 2005, Plaintiff Kirby executed a Note and Mortgage to ResMae Mortgage Corporation in connection with real property at 1125 East Eighth St., Tulsa, Oklahoma, thereby creating the underlying debt that lies at the heart of this controversy. Plaintiff Meadows is *not* a signatory to any of these loan documents. Defendants claim Meadows is a mere tenant of the East Eighth Street property. [Dkt. No. 19, ¶ II(B)]. However, Meadows says he has an ownership interest in the property by virtue of being a Trustee of a Trust which apparently now hold title to the property. [6/8/2015 dep. of Caleb Meadows, pp. 74-75]. Because of the differences in their status with respect to the underlying indebtedness related to the Eighth Street property, it is critical that the Plaintiffs answer discovery requests separately.

Similarly, the three named Defendants are positioned differently with respect to the claims herein. Defendant O'Dens is a partner in the Texas law firm, SettlePou. O'Dens and SettlePou first became involved with the Plaintiffs on march 24, 2014, when they entered appearances in a foreclosure action in Tulsa County District Court regarding the Eighth Street property. [Dkt. No. 33,

Ex. 1G, Ortwerth Dec., p. 8, ¶¶ 17-18]. Defendant Ocwen took over loan servicing on Kirby's loan from Saxon Mortgage Services on April 16, 2010. [*id.*, p. 5, ¶ 13]. Thus, it is important for each Defendant to get from each Plaintiff, a full description of what *that* Defendant did that gives rise to liability.

In November 2014, Defendants served discovery requests on the Plaintiffs. These consisted of interrogatories from each Defendant directed to each Plaintiff, and two sets document requests: one from the Defendants to Kirby and one from Defendants to Meadows. The discovery responses were problematic. Kirby and Meadows answered the discovery *jointly*; thus, there was no way for the Defendants to differentiate Kirby's answers from Meadows'. Further, the discovery responses were usually directed to the Defendants as though they constituted one entity. Thus, an individual Defendant could not discern with specificity what he or it was alleged to have done that constituted a basis for liability herein. In addition, Requests for Admission were not answered as required by the Federal Rules. Finally, the Plaintiffs interrogatory answers were not verified properly as required by the Federal Rules of Civil Procedure.

Now, nine months later, despite Court orders to correct their discovery responses, properly verify the interrogatories and separate out their answers [Dkt. Nos. 118 & 130], nothing has been done. Discovery has now closed and Defendants have not received basic information they need to understand Plaintiffs' individual claims or determine how those claims relate to individual Defendants. This has made it impossible for Defendants to adequately prepare

this case in the event of trial. Plaintiffs have intentionally denied the Defendants basic Rule 26 discovery, and it is now past the discovery deadline. Defendants have been prejudiced by unnecessary delay and increased attorney fees. *Ehrenhaus*, 965 F.2d at 921. This factor favors dismissal.

## B. Interference with the Judicial Process

As a result of Plaintiffs' misconduct, this Court has been called upon repeatedly to intervene in on-going discovery disputes. Between January and July 2015, the parties filed 24 discovery motions, the Court conducted two lengthy discovery hearings, and the Court presided over Plaintiffs' depositions at the Courthouse after Plaintiffs had earlier obstructed the taking of depositions. On one occasion, the Court had to call a U.S. Marshal into the Courtroom after Plaintiff Kirby refused to obey the Court's directives during a hearing. Plaintiffs' disobedience has resulted in a situation where certain pre-trial deadlines have had to be extended and the trial date continued. Still, the Defendants have not received the basic discovery they sought nine months ago. Plaintiffs have ignored the Court's orders, flouted their discovery obligations and disrupted the Court's scheduling of this case. *Id.*

Consideration of this factor weighs in favor of dismissal.

## C. Culpability of the Litigants

At the September 9 hearing, Meadows asserted that the law is clear that a case cannot be dismissed as a sanction absent a showing of bad faith. Meadows's first error is that "bad faith" is not the only ground to support a dismissal sanction. Failure to follow the rules or obey court orders is sufficient

when it is the result of "willfulness, bad faith, **or** any fault of petitioner."

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640

(1976) (emphasis added).  Willful noncompliance with a court order is a

sufficient basis for dismissal.  *Id.*; *Schroeder v. Southwest Airlines*, 129

Fed.Appx. 481, 484 (10th Cir. 2005); *M.E.N. Co. v. Control Fluidics, Inc.*, 834

F.2d 869, 873-74 (10th Cir. 1987).  A willful failure to obey a Court's Orders is

"any intentional failure as distinguished from involuntary noncompliance."

*M.E.N.*, 834 F.2d at 873.

More importantly, however, Plaintiffs' conduct herein does establish bad

faith.  A review of the 11 pages of deposition requirements Meadows sought to

enforce at the April 9 depositions or a cursory reading of the transcripts of his

and Kirby's June 8 depositions fully establish that the Plaintiffs here have

acted willfully and in bad faith.

Culpability for this misconduct lies solely with the Plaintiffs, since they

appear *pro se*.  The Plaintiffs have willfully chosen to ignore direct orders of this

Court, and have intentionally engaged in frivolous deposition conduct that

demonstrates disrespect for the Court, for the opposing parties and for the

judicial process itself.  The misconduct cannot be blamed on anyone but the

Plaintiffs.  Since they are acting *pro se*, there are no lawyers to blame.  *M.E.N.,*

834 F.2d at 873 (*quoting In re Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984) ("If

the fault lies with the attorneys, that is where the impact of sanction should be

lodged.")).  Plaintiffs' conduct has been willful, intentional and in bad faith.

There is no issue of accidental or involuntary noncompliance with the Court's

Orders.  Plaintiffs deliberately set upon a course of bad behavior; the fault lies solely with them.

This factor weighs heavily in favor of dismissal.

**D. Whether the Plaintiffs were Warned in Advance of Dismissal**

The Plaintiffs have been expressly warned on at least six occasions that their refusal to obey the Court's discovery orders could result in dismissal of their lawsuit:

- **April 10, 2015, Order, Dkt. No. 88.**  Plaintiffs were ordered to fully respond to Defendants' Requests for Production and were warned that failure to obey the Order could result in sanctions "up to and including dismissal of Plaintiffs' lawsuit."  [Dkt. No. 88, p. 3].

- **May 8, 2015, hearing on discovery.**  At a hearing in May 2015, following Plaintiffs' obstruction of scheduled depositions, the Court expressly warned the Plaintiffs that if they did not cooperate in discovery they ran the risk of having their lawsuit dismissed by the Court.  [Transcript of 5/8/2015 hearing, p. 47, lines 7-23].

- **May 14, 2015, Order, Dkt. No. 119.**  After Plaintiffs had intentionally obstructed their depositions – which had been ordered by the Court – depositions were ordered at the U.S. Courthouse.  Plaintiffs were expressly warned that if they failed to appear, refused to answer proper questions, or failed to conduct themselves appropriately, sanctions – "which may include dismissal of this lawsuit" – could be imposed.  [Dkt. No. 119, pp. 2-3].

- **May 29, 2015, Opinion and Order, Dkt. No. 130.**  After Plaintiffs' continued failure to cooperate in discovery, the Court again expressly notified them that failure to comply with the Court's order would subject them to sanctions, "up to and including a recommendation that this case be dismissed for failure to cooperate in discovery and failure to obey Court orders."  [Dkt. No. 130, p. 10].

- **July 6, 2015, Defendants' Motion for Sanctions, Dkt. No. 157.** In the pending motion, Defendants specifically asked this Court to dismiss Plaintiffs' lawsuit as a sanction for their not complying with the Court's orders. [Dkt. No. 157 at ¶D].

- **August 26, 2015, Order, Dkt. No. 193.** In setting Defendants' motion for hearing, the Court set forth the possible sanctions that could be imposed upon the Plaintiffs, including "dismissing the action or proceeding in whole or in part." [Dkt. No. 193, p. 1].

This factor also weighs in favor of dismissal.

### E. Efficacy of a Lesser Sanction

The Court has already imposed lesser sanctions for Plaintiffs' misconduct; however, Plaintiffs have ignored the Court's Order in this regard. After Plaintiffs' egregious misconduct at depositions scheduled for April 2015, the Court conducted a lengthy hearing on the issue of sanctions. Attorney O'Dens testified at length about costs incurred by his client as a result of Plaintiffs' shenanigans. Plaintiffs cross-examined O'Dens at length. Thereafter, after reviewing the fee request, and making appropriate reductions, the Court directed the Plaintiffs to pay $4,401.00 as reimbursement for causing O'Dens to travel from Dallas, Texas, to Tulsa for depositions that the Plaintiffs intentionally scuttled by disobeying this Court's directive as well as the Federal Rules of Civil Procedure. The Court directed Plaintiffs to pay the $4,401 by July 1, 2015. Plaintiffs ignored that Order, and have failed to pay the sanction, seek relief from the Order, or take any other appropriate action. Subsequent to the $4,401 sanction Order, Plaintiffs' conduct merited another sanction award. On July 17, 2015, pursuant to Rule 37(a)(5), the Court

granted an award of fees and expenses to the Defendants in the amount of $3,006.  That sum has not been paid either.  Thus, lesser sanctions have been imposed against Plaintiffs in this case, but they have been ignored.[13]  Thus, this factor also favors dismissal.

## VIII
## CONCLUSION

*"These rules govern the procedure in all civil actions and proceedings in the United States district courts.... They should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."* – Rule 1 of the Federal Rules of Civil Procedure.

For the past 10 months, Plaintiffs have deliberately and willfully refused to cooperate in discovery.  They have engaged in egregious nonsense, intended to delay these proceedings and to increase the cost of this litigation needlessly.  Rule 41(b) gives courts the authority to dismiss a case for "failure of the plaintiff to prosecute or to comply with these rules or any order of the court."  *Knoll v. AT&T*, 176 F.3d 359, 362-63 (10th Cir. 1999) (*citing In re Baker*, *supra*).  Dismissal is a drastic sanction; however, it is sometimes a necessary sanction.  It has been upheld as an appropriate sanction available to the district court where a party willfully fails to comply with discovery rules.  *Adams v. J.W. Jones Constr. Co.*, 703 F.2d 483, 484 n. 3 (10th Cir.1983); *U.S. v. $239,500 in U.S. Currency*, 764 F.2d 771, 773 (11th Cir.1985).  Where dismissal is to be

---

[13]  The Court is aware that Plaintiffs appear in this case *pro se* and that they have been allowed to proceed herein *in forma pauperis* [Dkt. No. 7].  The Court is also aware that Plaintiffs claim ownership of real property estimated to be worth $400,000 to $500,000, and personal property worth $6,000.  [Dkt. No. 5].  Plaintiffs have not submitted any evidence that they are unable to pay the monetary sanctions.

imposed, the Court should set forth in the record its justification for the sanction. *In re Baker*, 744 F.2d at 1442.

In this instance, all five of the *Ehrenhaus* factors favor dismissal as the appropriate remedy. After due consideration of those factors and all of the record evidence, I **RECOMMEND** that the Court enter Judgment for Defendants and against Plaintiffs jointly and severally for $7,407.00 – the sanction amounts already imposed by this Court. I further **RECOMMEND THAT THIS CASE BE DISMISSED WITH PREJUDICE** as a result of Plaintiffs' refusal to obey the Court's orders and their obstructive behavior that has derailed the discovery process.

## OBJECTION

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so by **September 29, 2015**. *See* 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States*, 950 F.2d 656 (10th Cir. 1991); and *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

DATED this 15th day of September 2015.

_____

Paul J. Cleary
United States Magistrate Judge